**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: CLEAN WATER ACT RULEMAKING | No. 21-16958 |
| ------------------------------ | D.C. Nos. 3:20-cv-04636-WHA 3:20-cv-04869-WHA 3:20-cv-06137-WHA |
| AMERICAN RIVERS; AMERICAN WHITEWATER; CALIFORNIA TROUT; IDAHO RIVERS UNITED; COLUMBIA RIVERKEEPER; SIERRA CLUB; SUQUAMISH TRIBE; PYRAMID LAKE PAIUTE TRIBE; ORUTSARARMIUT NATIVE COUNCIL; STATE OF CALIFORNIA; STATE WATER RESOURCES CONTROL BOARD; STATE OF OREGON; STATE OF NEW JERSEY; STATE OF NEW YORK; STATE OF MARYLAND; STATE OF RHODE ISLAND; STATE OF COLORADO; DISTRICT OF COLUMBIA; STATE OF NORTH CAROLINA; COMMONWEALTH OF VIRGINIA; STATE OF NEW MEXICO; STATE OF VERMONT; STATE OF MINNESOTA; STATE OF CONNECTICUT; STATE OF | OPINION |

WASHINGTON; STATE OF
MICHIGAN; COMMONWEALTH
OF MASSACHUSETTS; STATE OF
NEVADA; STATE OF WISCONSIN;
STATE OF MAINE; STATE OF
ILLINOIS,

*Plaintiffs-Appellees,*

v.

ANDREW R. WHEELER; U.S.
ENVIRONMENTAL PROTECTION
AGENCY,

*Defendants-Appellees,*

NATIONAL HYDROPOWER
ASSOCIATION,

*Intervenor-Defendant,*

STATE OF ARKANSAS; STATE OF
LOUISIANA; STATE OF
MISSISSIPPI; STATE OF
MISSOURI; STATE OF MONTANA;
STATE OF WEST VIRGINIA;
STATE OF WYOMING; STATE OF
TEXAS,

*Intervenors,*

and

AMERICAN PETROLEUM
INSTITUTE; INTERSTATE
NATURAL GAS ASSOCIATION OF
AMERICA,

　　　　　*Intervenor-Defendants-*
　　　　　*Appellants.*

In re: CLEAN WATER ACT
RULEMAKING

-------------------------------

AMERICAN RIVERS; AMERICAN
WHITEWATER; CALIFORNIA
TROUT; IDAHO RIVERS UNITED;
COLUMBIA RIVERKEEPER;
SIERRA CLUB; SUQUAMISH
TRIBE; PYRAMID LAKE PAIUTE
TRIBE; ORUTSARARMIUT
NATIVE COUNCIL; STATE OF
CALIFORNIA; STATE WATER
RESOURCES CONTROL BOARD;
STATE OF OREGON; STATE OF
NEW JERSEY; STATE OF NEW
YORK; STATE OF MARYLAND;
STATE OF RHODE ISLAND;
STATE OF COLORADO; DISTRICT
OF COLUMBIA; STATE OF
NORTH CAROLINA;
COMMONWEALTH OF VIRGINIA;
STATE OF NEW MEXICO; STATE

No. 21-16960

D.C. Nos.
3:20-cv-04636-
WHA
3:20-cv-04869-
WHA
3:20-cv-06137-
WHA

OF VERMONT; STATE OF
MINNESOTA; STATE OF
CONNECTICUT; STATE OF
WASHINGTON; STATE OF
MICHIGAN; COMMONWEALTH
OF MASSACHUSETTS; STATE OF
NEVADA; STATE OF WISCONSIN;
STATE OF MAINE; STATE OF
ILLINOIS,

*Plaintiffs-Appellees,*

v.

ANDREW R. WHEELER; U.S.
ENVIRONMENTAL PROTECTION
AGENCY,

*Defendants-Appellees,*

AMERICAN PETROLEUM
INSTITUTE; INTERSTATE
NATURAL GAS ASSOCIATION OF
AMERICA,

*Intervenor-Defendants,*

STATE OF ARKANSAS; STATE OF
LOUISIANA; STATE OF
MISSISSIPPI; STATE OF
MISSOURI; STATE OF MONTANA;
STATE OF WEST VIRGINIA;
STATE OF WYOMING; STATE OF

TEXAS,

     *Intervenors,*

 and

NATIONAL HYDROPOWER
ASSOCIATION,

     *Intervenor-Defendant-*
     *Appellant.*

---

In re: CLEAN WATER ACT
RULEMAKING

-------------------------------

AMERICAN RIVERS; AMERICAN
WHITEWATER; CALIFORNIA
TROUT; IDAHO RIVERS UNITED;
COLUMBIA RIVERKEEPER;
SIERRA CLUB; SUQUAMISH
TRIBE; PYRAMID LAKE PAIUTE
TRIBE; ORUTSARARMIUT
NATIVE COUNCIL; STATE OF
CALIFORNIA; STATE WATER
RESOURCES CONTROL BOARD;
STATE OF OREGON; STATE OF
NEW JERSEY; STATE OF NEW
YORK; STATE OF MARYLAND;
STATE OF RHODE ISLAND;
STATE OF COLORADO; DISTRICT
OF COLUMBIA; STATE OF

No. 21-16961

D.C. Nos.
3:20-cv-04636-
WHA
3:20-cv-04869-
WHA
3:20-cv-06137-
WHA

NORTH CAROLINA;
COMMONWEALTH OF VIRGINIA;
STATE OF NEW MEXICO; STATE
OF VERMONT; STATE OF
MINNESOTA; STATE OF
CONNECTICUT; STATE OF
WASHINGTON; STATE OF
MICHIGAN; COMMONWEALTH
OF MASSACHUSETTS; STATE OF
NEVADA; STATE OF WISCONSIN;
STATE OF MAINE; STATE OF
ILLINOIS,

*Plaintiffs-Appellees,*

STATE OF ARKANSAS; STATE OF
LOUISIANA; STATE OF
MISSISSIPPI; STATE OF
MISSOURI; STATE OF MONTANA;
STATE OF WEST VIRGINIA;
STATE OF WYOMING; STATE OF
TEXAS,

*Intervenors-Appellants,*

v.

ANDREW R. WHEELER; U.S.
ENVIRONMENTAL PROTECTION
AGENCY,

*Defendants-Appellees,*

AMERICAN PETROLEUM
INSTITUTE; INTERSTATE
NATURAL GAS ASSOCIATION OF
AMERICA; NATIONAL
HYDROPOWER ASSOCIATION,

*Intervenor-Defendants.*

and

STATE OF ARKANSAS; STATE OF
LOUISIANA; STATE OF
MISSISSIPPI; STATE OF
MISSOURI; STATE OF MONTANA;
STATE OF WEST VIRGINIA;
STATE OF WYOMING; STATE OF
TEXAS,

*Intervenors-Appellants,*

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted November 15, 2022
San Jose, California

Filed February 21, 2023

Before: Susan P. Graber, Richard C. Tallman, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland

## SUMMARY[*]

### Remands / Agency Action

Reversing the district court's order granting a voluntary remand and vacating an Environmental Protection Agency ("EPA") regulation promulgated under the Clean Water Act ("CWA"), the panel held that a court granting a voluntary remand lacks authority to also vacate the regulation without first holding it unlawful.

One CWA requirement, known as Section 401 certification, obligates any applicant for a federal license or permit to conduct activity that may result in a discharge into the navigable waters of the United States to obtain certification (or waiver of certification) from the state governing the area where a discharge would originate. The Section 401 regulatory scheme remained unchanged until July 2020, when the EPA promulgated CWA Section 401 Certification Rule ("2020 Rule").

Several states, environmental groups, and tribes ("Plaintiffs") filed lawsuits challenging the 2020 Rule. A different set of states and energy industry groups intervened to defend the 2020 Rule. Before the litigation reached the summary judgment stage, a new President was elected. The EPA publicly announced its intent to revise the 2020 Rule, and moved in district court for a remand of the 2020 Rule so that the agency could reconsider it. The district court granted the EPA's remand motion, and granted Plaintiffs'

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

request for vacatur of the 2020 Rule.  Intervenor-Defendants appealed the district court's order vacating the 2020 Rule. After unsuccessfully seeking a stay pending appeal from the district court and this court, the Supreme Court granted an emergency stay, so that the 2020 Rule has been in effect since.

The panel held that it had jurisdiction to review the district court's remand order.  Plaintiffs' goal in bringing this lawsuit was to have the 2020 Rule vacated, and Intervenor-Defendants sought to keep it in place.  When the district court vacated the 2020 Rule in conjunction with granting the request for a voluntary remand, it gave Plaintiffs everything they wanted and left nothing else for the court to do.  The district court's order was thus final and appealable.  The panel rejected the EPA's argument that *Alsea Valley Alliance v. Department of Commerce*, 358 F.3d 1181 (9th Cir. 2004), applied here.  Instead, general finality principles applied.

The panel exercised its jurisdiction and held that courts may not vacate agency actions in conjunction with granting requests for voluntary remands without first holding the agency actions unlawful.  Plaintiffs contended that if voluntary remands before merits determinations existed, then so too must the authority to vacate the challenged authority in the interim.  The panel held that federal courts do not have unlimited equitable authority.  Precedent suggests that permanent equitable remedies can be awarded against only *illegal* executive action. Illegality requires establishing that there has been (or will be) a violation of the law.

Even if Plaintiffs could point to some precedent supporting a court's authority to vacate executive action

without a merits ruling, the panel read the Administrative
Procedure Act ("APA") as foreclosing any authority of
courts to vacate agency actions not first held
unlawful.  Because Congress set forth in the APA a detailed
process for repealing rules, the panel held that it could not
endorse a judicial practice that would help agencies
circumvent that process.  The panel rejected two
counterarguments raised by Plaintiffs.  First, Plaintiffs
argued that, because voluntary remands exist in a realm of
equity that comes before a judicial ruling on the merits, the
APA's judicial-review section had nothing to say about what
equitable remedies courts may fashion in the voluntary-
remand context.  The panel held that the APA's judicial-
review section cannot be construed so narrowly.  Second,
citing policy concerns, Plaintiffs urged that the APA should
be read to give courts the authority to vacate regulations
without first holding them unlawful.  The panel held that
policy concerns cannot trump the best interpretation of the
statutory text.  The APA's text is best read as authorizing a
court to vacate an agency action only when that court first
held that action unlawful.

The panel concluded that the district court lacked
authority to vacate the 2020 Rule without first holding it
unlawful.  The panel reversed the district court's order in its
entirety and sent the case back on an open record for
reconsideration of the EPA's remand motion.

**COUNSEL**

George P. Sibley, III (argued), Hunton Andrews Kurth LLP, Richmond, Virginia; Deidre G. Duncan and Erica N. Peterson, Hunton Andrews Kurth LLP, Washington, D.C.; Clare Ellis, Hunton Andrews Kurth LLP, San Francisco, California; Misha Tseytlin, Troutman Pepper Hamilton Sanders LLP, Chicago, Illinois; Charles Sensiba, Troutman Pepper Hamilton Sanders LLP, Washington, D.C.; Elizabeth Holt Andrews, Troutman Pepper Hamilton Sanders LLP, San Francisco, California; Joseph S. St. John, Deputy Solicitor; Elizabeth B. Murrill, Solicitor General; Jeff Landry, Attorney General; Louisiana Department of Justice, Baton Rouge, Louisiana; James Kaste, Deputy Attorney General, Office of the Attorney General, Cheyenne, Wyoming; Leslie Rutledge, Attorney General, Little Rock, Arkansas; Lynn Fitch, Attorney General, Jackson, Mississippi; Eric Schmitt, Attorney General, Springfield, Missouri; Austin Knudsen, Attorney General, Helena, Montana; Benjamin D. Wilson, Deputy Solicitor General; Ken Paxton, Attorney General; Office of the Attorney General, Austin, Texas; Patrick Morrisey, Attorney General, Charleston, West Virginia;   for Intervenor-Defendants-Appellants.

Kevin W. McArdle (argued), Leslie M. Hill, and Elisabeth H. Carter, Attorneys, Environment and Natural Resources Division; Todd Kim, Assistant Attorney General; United States Department of Justice, Washington, D.C.; Alexis Wade, Peter Ford, Andrea Priest, and Alexander Mullee, Attorneys, United States Environmental Protection Agency, Washington, D.C.; for Defendants-Appellees.

Kelly T. Wood (argued), Assistant Attorney General; Leslie Griffith, Deputy Solicitor General; Robert W. Ferguson, Attorney General, Office of the Attorney General, Olympia, Washington; Brian M. Lusignan, Assistant Attorney General; Laura Etlinger, Assistant Solicitor General; Andrea Oser, Deputy Solicitor General; Letitia James, Attorney General; Office of the Attorney General, Albany, New York; Adam Levitan and Tatiana K. Gaur, Deputy Attorneys General; Eric Katz and Sarah E. Morrison, Supervising Deputy Attorneys General; Rob Bonta, Attorney General; Office of the Attorney General, Los Angeles, California; Bryant B. Cannon, Deputy Attorney General, Office of the Attorney General, San Francisco, California; Jason R. Flanders, Aqua Terra Aeris Law Group, Oakland, California; Peter M. K. Frost and Sangye Ince-Johannsen, Western Environmental Law Center, Eugene, Oregon; Andrew M. Hawley, Western Environmental Law Center, Seattle, Washington; Kristen L. Boyles, Earthjustice, Seattle, Washington; Olivia Glasscock, Earthjustice, Juneau, Alaska; Nathan Matthews, Sierra Club, Oakland, California; Moneen S. Nasmith and Michael Z. Youhana, Earthjustice, New York, New York; Annette M. Quill, Senior Assistant Attorney General; Philip J. Weiser, Attorney General; Office of the Attorney General, Denver, Colorado; Jill Lacedonia, Assistant Attorney General; William Tong, Attorney General; Office of the Attorney General, Hartford, Connecticut; Karl A. Racine, Attorney General; Caroline S. Van Zile, Solicitor General; Office of the Attorney General, Washington, D.C.; Kwame Raoul, Attorney General, Springfield, Illinois; Jillian R. O'Brien, Assistant Attorney General; Aaron Frey, Attorney General; Office of the Attorney General, Augusta, Maine; John B. Howard, Jr., Special Assistant Attorney General; Brian Frosh, Attorney

General; Office of the Attorney General, Baltimore, Maryland; Maura Healey, Attorney General, Boston, Massachusetts; Gillian E. Wener, Assistant Attorney General; Dana Nessel, Attorney General; Office of the Attorney General, Lansing, Michigan; Peter Surdo, Special Assistant Attorney General; Keith Ellison, Attorney General; Office of the Attorney General; Saint Paul, Minnesota; Aaron D. Ford, Attorney General, Carson City, Nevada; Lisa Morelli, Deputy Attorney General; Matthew J. Platkin, Attorney General; Office of the Attorney General, Trenton, New Jersey; Hector Balderas, Attorney General, Santa Fe, New Mexico; Taylor H. Crabtree, Assistant Attorney General; Joshua S. Stein, Attorney General; Office of the Attorney General, Raleigh, North Carolina; Paul Garrahan, Assistant Attorney General; Ellen F. Rosenblum, Attorney General; Office of the Attorney General, Salem, Oregon; Alison B. Hoffman, Special Assistant Attorney General; Peter F. Neronha, Attorney General; Office of the Attorney General, Providence, Rhode Island; Laura B. Murphy, Assistant Attorney General; Suzanne R. Young, Attorney General; Office of the Attorney General, Montpelier, Vermont; Gabe Johnson-Karp, Assistant Attorney General; Josh Kaul, Attorney General; Office of the Attorney General, Madison, Wisconsin; Christopher E. Bergin Jr., Assistant Attorney General, Office of the Attorney General, Richmond, Virginia; William Grantham, Assistant Attorney General, Office of the Attorney General, Albuquerque, New Mexico; Matthew Ireland, Assistant Attorney General, Office of the Attorney General, Boston, Massachusetts; Heidi Parry Stern, Solicitor General, Office of the Attorney General, Las Vegas, Nevada; Jason E. James, Assistant Attorney General, Office of the Attorney General, Chicago, Illinois; for Plaintiffs-Appellees.

## **OPINION**

FRIEDLAND, Circuit Judge:

When a federal regulation is challenged in court, the promulgating agency may ask the court to remand the regulation to the agency for an opportunity to reevaluate it and correct any errors. Courts often grant such voluntary remands without ruling on the lawfulness of the challenged regulation. The question we face today is whether a court granting a voluntary remand may also vacate the regulation without first holding it unlawful, as the district court did here. We hold that courts lack the authority to do so, and we therefore reverse.

### **I.**

### **A.**

The Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, as its name suggests, aims to "restore and maintain the . . . integrity of the Nation's waters." *County of Maui v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1468 (2020) (citation omitted). Among other things, the CWA entrusts states with the authority to set water-quality standards within their borders,[1] and it imposes certain requirements before pollutants may be discharged into the navigable waters of the United States. *See PUD No. 1 of Jefferson Cnty. v. Wash.*

---

[1] A state's water-quality standards are subject to federal approval to ensure that they meet the minimum requirements of federal law. *See PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 704-08 (1994). But "[s]tates may adopt water quality standards that are more stringent than federal law requires." *Cal. State Water Res. Control Bd. v. FERC*, 43 F.4th 920, 924 (9th Cir. 2022).

*Dep't of Ecology*, 511 U.S. 700, 704-08 (1994); *Wildlife Fund*, 140 S. Ct. at 1468.

One CWA requirement, known as Section 401 certification, obligates "[a]ny applicant for a Federal license or permit to conduct any activity . . . which may result in any discharge into the navigable waters" of the United States to obtain a certification (or a waiver of certification) from the state[2] governing the area where a discharge would originate. 33 U.S.C. § 1341(a)(1). Such a certification affirms that the discharge would comply with various water-quality provisions of the CWA—including the federally approved water-quality standards set by the state. *Id.*; *see also PUD No. 1*, 511 U.S. at 707-08; *Cal. State Water Res. Control Bd. v. FERC*, 43 F.4th 920, 924-25 (9th Cir. 2022) (explaining one state's process for conducting its review of an applicant's certification request). The CWA imposes a time limit within which the state must act once it receives a request for certification: If a state "fails or refuses to act on a request for certification[] within a reasonable period of time (which shall not exceed one year) after receipt of such request," the CWA provides that "the certification requirements . . . shall be waived." 33 U.S.C. § 1341(a)(1)*.* Because a state may impose water-quality standards that are more stringent than federal standards, waiver could result in federal approval of a license or permit to discharge pollutants into waters within the state's borders even though the discharge would violate state water-quality standards. *See Cal. State Water Res. Control Bd.*, 43 F.4th at 924.

---

[2] The CWA also authorizes the EPA "to treat an Indian tribe as a State" for purposes of Section 401 in certain circumstances. 33 U.S.C. § 1377(e).

Initially, the Environmental Protection Agency ("EPA") implemented the Section 401 certification process by carrying forward preexisting regulations that had governed the certification process found in the CWA's predecessor federal water-quality statute. *See* State Certification of Activities Requiring a Federal License or Permit, 36 Fed. Reg. 8563 (May 8, 1971) (40 C.F.R. pt. 121 (2019)). Those regulations imposed certain requirements on the state agencies responsible for certifying compliance with water-quality standards. *See* 40 C.F.R. §§ 121.1(e), 121.2 (2019). One regulation required the state certifying authority to provide a "statement that there [was] a reasonable assurance that the activity [would] be conducted in a manner which [would] not violate applicable water quality standards." *Id.* § 121.2(a)(3). Another required the state certifying authority to provide a "statement of any conditions which [it] deem[ed] necessary or desirable with respect to the discharge of the activity." *Id.* § 121.2(a)(4).

In addition, the regulations explained how a state could waive certification. *Id.* § 121.16 (2019). Either the state could provide written notice waiving the certification requirement to the federal agency issuing the permit or license, or that federal agency could send the EPA "[w]ritten notification" that the state failed to act on the certification request "within a reasonable period of time after receipt of such request, as determined by the [federal] agency." *Id.* The regulations specified that the time period "shall generally be considered to be 6 months, but in any event shall not exceed 1 year." *Id.* § 121.16(b). Because of this time limit and some states' exacting requirements for obtaining certification, a practice developed in which an applicant would withdraw and resubmit its certification request to restart the clock for the state to act on the request,

effectively extending the one-year time limit rather than having the request denied under the state's certification process. *See Cal. State Water Res. Control Bd.*, 43 F.4th at 924-25 (describing the withdrawal-and-resubmission practice). That practice "afford[ed] the project applicant more time to comply with procedural and substantive prerequisites to certification [in the state] and the state more time to decide whether and under what conditions it [would] grant the certification request." *Id.* at 925.

## B.

The Section 401 regulatory regime remained unchanged for decades, until July 2020, when the EPA promulgated the Clean Water Act Section 401 Certification Rule ("2020 Rule"). *See* Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42210 (July 13, 2020) (40 C.F.R. pt. 121 (2021)). Two provisions in the 2020 Rule are relevant here.

One provision aims to reduce the scope of states' certification authority. The 2020 Rule provides that certification is "limited to assuring that a *discharge* from a Federally licensed or permitted activity will comply with water quality requirements [as defined in the 2020 Rule]." 40 C.F.R. § 121.3 (2021) (emphasis added); *id*. § 121.1(n) (defining "[w]ater quality requirements"). The EPA explained that it made this change to focus the certification criteria on "discharges" affecting water quality, not "activities" that affect water quality more generally. Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. at 42251; *see also id.* at 42253 (listing potential examples of such activities).

The second relevant provision addresses when the one-year time limit for acting on a certification request begins and ends. The 2020 Rule provides that "the reasonable

period of time" within which a state may act on a
certification request "shall not exceed one year from [the
date of] receipt," 40 C.F.R. § 121.6(a), which is "the date
that a certification request is documented as received by a
[state] in accordance with applicable submission
procedures," *id.* § 121.1(m). It further instructs that a state
"is not authorized to request the project proponent to
withdraw a certification request and is not authorized to take
any action to extend the reasonable period of time" beyond
one year from the date of receipt. *Id.* § 121.6(e). These
clauses were aimed at shortening how long a state has to act
on a certification request. *See* Clean Water Act Section 401
Certification Rule, 85 Fed. Reg. at 42223, 42235-36.

## C.

Shortly after the EPA published the final 2020 Rule,
several states, environmental groups, and tribes
(collectively, "Plaintiffs") filed three lawsuits challenging
the Rule in the United States District Court for the Northern
District of California. Plaintiffs argued that the Rule was
inconsistent with the CWA, and they sought an order
vacating it under the Administrative Procedure Act
("APA"), 5 U.S.C. § 706. A different set of states and energy
industry groups (collectively, "Intervenor-Defendants")
intervened to defend the Rule in the three cases, which the
district court consolidated.

Before the litigation reached the summary judgment
stage, a new President was elected. On his first day in office,
President Biden directed federal agencies to review
regulations concerning the protection of public health and
the environment that were enacted under the previous
Administration. Exec. Order No. 13,990, 86 Fed. Reg. 7037,
7037 (Jan. 20, 2021). The EPA responded by asking the

district court to stay the proceedings so that the agency could review the 2020 Rule.

A few months later, the EPA publicly announced its intent to revise the 2020 Rule. *See* Notice of Intention to Reconsider and Revise the Clean Water Act Section 401 Certification Rule, 86 Fed. Reg. 29541 (June 2, 2021). The EPA explained that, after considering the "text of CWA Section 401" and other factors, it had "identified substantial concerns with a number of provisions of the [2020] Rule that relate to cooperative federalism principles and CWA Section 401's goal of ensuring that states are empowered to protect their water quality." *Id.* at 29542. Citing those concerns, the EPA moved in district court for a remand of the 2020 Rule so that the agency could reconsider it, and the agency asked the district court to leave the 2020 Rule in effect during that remand.

In response, Plaintiffs argued that the district court should either deny the motion so that the litigation to invalidate the 2020 Rule could proceed, or grant the EPA's remand request but also vacate the 2020 Rule. Plaintiffs argued that keeping the 2020 Rule in place during a potentially lengthy remand would severely harm water quality by frustrating states' efforts to limit the adverse water quality impacts of federally licensed projects.

Intervenor-Defendants took no position on the EPA's motion for remand, but opposed Plaintiffs' request for vacatur, arguing that the district court lacked the authority to vacate the 2020 Rule without first making a merits determination. In Intervenor-Defendants' view, the APA permits courts to set aside only *unlawful* agency action. Because the district court had not yet determined whether the 2020 Rule was lawful—nor had merits briefing even

begun—Intervenor-Defendants contended that the district court lacked the authority to vacate it.

The district court granted the EPA's remand motion and, rejecting Intervenor-Defendants' arguments, also granted Plaintiffs' request for vacatur.

Intervenor-Defendants timely appealed the district court's order vacating the 2020 Rule. After unsuccessfully seeking from the district court and our court a stay of the vacatur of the 2020 Rule pending appeal, Intervenor-Defendants sought an emergency stay in the Supreme Court. The Supreme Court granted that stay, so the 2020 Rule has been in effect since. *Louisiana v. Am. Rivers*, 142 S. Ct. 1347 (2022) (granting stay of the district court's order "insofar as it vacates the [2020 Rule]").

**D.**

On appeal, Intervenor-Defendants reprise the argument that they pressed before the district court: under the APA, a court may vacate only unlawful agency action. Because the district court vacated the 2020 Rule without ever holding it unlawful, Intervenor-Defendants contend that the district court exceeded its authority.

Plaintiffs and the EPA argue that we lack jurisdiction to even consider Intervenor-Defendants' argument because the district court's decision is not a final appealable order. But to the extent that we have jurisdiction, the EPA and Plaintiffs part ways on the merits. The EPA agrees with Intervenor-Defendants that the APA prohibited the district court from vacating the 2020 Rule without first holding it unlawful. Plaintiffs, on the other hand, argue that principles of equity authorized the district court to vacate the Rule without first holding it unlawful.

## II.

We review de novo jurisdictional questions, *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020), as well as "questions of statutory interpretation" and "questions involving [a] court's authority to act." *United States v. Ray*, 375 F.3d 980, 988 (9th Cir. 2004).

## III.

We first consider whether we have jurisdiction to review the district court's remand order. We hold that we do.

Under 28 U.S.C. § 1291, we have "jurisdiction only over appeals from final orders." *Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 (9th Cir. 1990). In general, a "decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" is final under § 1291. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (citation and internal quotation marks omitted).

The district court's order here terminated the only dispute between the parties, which was whether the 2020 Rule should stay in effect. Plaintiffs' goal in bringing this lawsuit was to have the 2020 Rule vacated, and Intervenor-Defendants sought to keep it in place. When the district court vacated the 2020 Rule in conjunction with granting EPA's request for a voluntary remand, it gave Plaintiffs everything they wanted and left nothing else for the court to do. The district court's order is thus final and appealable.

The EPA resists this conclusion by arguing that, under *Alsea Valley Alliance v. Department of Commerce*, 358 F.3d 1181 (9th Cir. 2004), district court remands to agencies are not final appealable orders. In *Alsea*, we held that we lacked

jurisdiction under 28 U.S.C. § 1291 over an intervenor's appeal from a district court order that had held invalid, vacated, and remanded an agency regulation. *Id.* at 1183-86. Our decision explained that remand orders to agencies generally are not final but that a remand order will be treated as final when "(1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable." *Id.* at 1184 (quoting *Collord v. U.S. Dep't of the Interior*, 154 F.3d 933, 935 (9th Cir. 1998)). Applying that test, we held that the district court's decision remanding the vacated regulation was not a final appealable order because it failed the third prong. *Id.* at 1184-85. We explained that later appellate review would not be foreclosed because the intervenor could challenge the result of the agency's reconsideration process if dissatisfied with it. *Id.*

*Alsea* does not control here. That case involved a particular kind of order: one in which a district court reaches a merits decision on the lawfulness of a challenged regulation and returns the matter to the agency to remedy the problems identified in the merits decision. It is for evaluating that type of order that we developed the three-part finality test applied in *Alsea*. *See Stone v. Heckler*, 722 F.2d 464, 467 (9th Cir. 1983) (setting forth the general framework to determine whether a district court decision remanding to an agency after a merits decision is final and appealable); *Chugach Alaska Corp.*, 915 F.2d at 457 (first articulating the inquiry as a three-part finality test to determine jurisdiction to review a district court decision remanding to an agency after a merits decision). That role is obvious from the wording of the test itself, which presupposes a reasoned

merits order that could "conclusively resolve[] a separable legal issue" or announce "a potentially erroneous rule." *Alsea*, 358 F.3d at 1184 (quoting *Collord*, 154 F.3d at 935). Consistent with this analysis, we have applied the *Alsea* finality test only to reasoned merits orders. *See, e.g.*, *Crow Indian Tribe v. United States*, 965 F.3d 662, 676 (9th Cir. 2020) (applying the three-part finality test to determine jurisdiction to review a district court decision remanding to an agency after a merits decision); *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1074-77 (9th Cir. 2010) (same). The three-part test thus has no application to a district court decision that entirely skips over any merits adjudication. Because there was no merits adjudication here, *Alsea* is inapposite.

Instead, general finality principles apply. The "core application [of § 1291] is to rulings that terminate an action." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015). Again, the district court's decision to vacate the rule here resolved the only dispute between the parties and terminated this action. We therefore have appellate jurisdiction to review the district court's order.

Our conclusion comports with that reached by the D.C. Circuit in a similar situation. In *Limnia, Inc. v. United States Department of Energy*, 857 F.3d 379 (D.C. Cir. 2017), the D.C. Circuit considered a voluntary remand in a dispute over whether the Department of Energy had improperly denied loan applications from a battery company called Limnia. *Id.* at 381. Limnia argued that the denial violated the APA and that Limnia's applications should be approved. *Id.* at 382. The agency moved for a remand, and the district court granted the motion without addressing the substance of Limnia's APA claims. *Id.* at 382-84. It was clear that the district court's order anticipated that, on remand, the original

loan applications would be disregarded and that Limnia would have to file new loan applications and pay a new application fee if it wished to continue to pursue a loan from the agency. *Id.* at 386 (explaining that the district court had accepted the agency's position that "remand was appropriate, even though [the agency] was not offering to reconsider the denial of Limnia's . . . loan applications or waive the . . . application fee"). Limnia appealed the remand order, and the agency argued that the D.C. Circuit lacked jurisdiction because remand orders typically are not final. *Id.* at 385. The D.C. Circuit rejected that argument. *Id.* at 385-86. The court explained that the district court's decision was final because it effectively ended the parties' core dispute by denying Limnia the relief it sought in court: a grant of its original loan application. *Id.* at 386. The D.C. Circuit reasoned that it "would strain common sense" to treat that district court order as non-final simply because it was labeled a remand and remands typically are not final. *Id.* (quoting *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 699 (10th Cir. 2009)). Instead, the court focused on the practical effect of the district court's order, which was to leave in place the agency's denial of the original loan applications—the same result that would have been achieved had the litigation proceeded and the agency had prevailed. *Id.* Similarly, here, vacatur of the 2020 Rule is the same result that would have been achieved had the litigation proceeded and Plaintiffs had prevailed. In both situations, the practical effect of the remand order was to end the parties' dispute, creating the finality needed for appellate jurisdiction.

## IV.

We now exercise our jurisdiction to consider whether courts may vacate agency actions in conjunction with

granting requests for voluntary remands without first holding the agency actions unlawful. We hold that they may not.

**A.**

When an agency's action is challenged in court, the agency will sometimes request that the court remand the challenged action—usually a regulation—so that the agency can correct any errors in the first instance. *See Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012). For such a voluntary remand to be granted, "the agency ordinarily . . . need[s] to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge." *Limnia, Inc.*, 857 F.3d at 387; *see also NRDC v. EPA*, 38 F.4th 34, 60 (9th Cir. 2022).

Voluntary remands conserve judicial resources by allowing agencies to correct their errors *before* courts reach merits determinations requiring them to do so. *See, e.g.*, *NRDC*, 38 F.4th at 60-62 (granting a voluntary remand without making a merits determination). Courts retain "broad discretion" in deciding whether to grant a voluntarily requested remand but have "generally grant[ed] an agency's request for voluntary remand unless the request is frivolous or made in bad faith." *Id.* at 60 (first passage quoting *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018)).

**B.**

Plaintiffs argue that principles of equity support pairing the authority to grant a voluntary remand (which usually occurs without a merits decision) with a corresponding authority to vacate the challenged rule during a voluntary remand. Otherwise, Plaintiffs assert, voluntary remands

could lead to inequitable consequences: While an agency reassesses the challenged rule on remand, a plaintiff may be forced to live with a rule that it contends is unlawful.  In short, Plaintiffs contend that if voluntary remands before merits determinations exist, so too must the authority to vacate a challenged rule in the interim.

Plaintiffs' argument overlooks that federal courts do not have unlimited equitable authority.  As the Supreme Court has explained, the equitable authority of the federal courts extends only so far as that which the courts of equity in England traditionally exercised "at the time of the separation" between the United States and England. *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999) (quotation marks omitted).  Plaintiffs have pointed to no legal precedent or historical examples suggesting that courts of equity were empowered to vacate an executive action not first held to violate the law, and we are aware of none.

Precedent instead suggests that permanent equitable remedies can be awarded against only *illegal* executive action.  And illegality, of course, requires establishing that there has been (or will be) a violation of the law.  *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015).  It is well settled that federal courts have equitable authority to "enjoin unconstitutional actions by state and federal officers." *Id.* at 327.  The Supreme Court has also long recognized the inherent authority of federal courts to award equitable remedies against other types of unlawful executive actions. *See, e.g.*, *Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 748-49, 871 (1824) (affirming an order of restitution against a state tax officer in favor of the Bank of the United States when money "was taken out of the Bank *unlawfully*" (emphasis added)); *Am. Sch. of*

*Magnetic Healing v. McAnnulty*, 187 U.S. 94, 108-11 (1902) (remanding with instructions that the district court enter an order requiring the Postmaster General to deliver mail that he had been withholding without statutory authority to do so). In all instances, the authority of courts to impose permanent equitable remedies was invoked only *after* holding the executive action unlawful.**[3]** Because we are unaware of any precedent or historical examples supporting the power of courts to vacate executive action not first held unlawful, we reject Plaintiffs' argument that the district court had such authority.

## C.

Moreover, even if Plaintiffs could point to some precedent supporting a court's authority to vacate executive action without a merits ruling, we read the APA as foreclosing any authority of courts to vacate agency actions not first held unlawful. *See Armstrong*, 575 U.S. at 327 ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations.").

### 1.

In its judicial-review section, the APA instructs courts to "set aside" (*i.e.*, to vacate) agency actions held to be

---

[3] Even when equitable relief is sought on a temporary basis, a court cannot enter such relief without first evaluating the merits. *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed *on the merits*, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." (emphasis added) (quoting *Winter v. NRDC*, 555 U.S. 7, 20 (2008))).

unlawful.    5 U.S.C. § 706(2) (instructing courts to "set aside" those actions "found to be," for example, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").  By granting courts authority to "set aside" agency actions "found to be" unlawful, *id.*, the APA not only expressly explains *when* a court may set aside agency action (upon a holding of unlawfulness), it also implicitly explains when a court *cannot* (without a holding of unlawfulness).  This reading follows from the basic canon of construction establishing that an "explicit listing" of some things "should be understood as an *exclusion of others*" not listed—even when a statute "does not say expressly that *only*" the listed things are included.  *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc).  And this reading is further reinforced by our precedent holding that, when a statute lists certain remedies, we should be "chary of reading others into it."  *Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co. (AZ)*, 632 F.3d 1111, 1121 (9th Cir. 2011) (quoting *Owner-Operator Indep. Drivers Ass'n v. Landstar Sys., Inc.*, 622 F.3d 1307, 1323-24 (11th Cir. 2010)).

In addition, the APA defines rulemaking as the "agency process for formulating, amending, or *repealing* a rule."  5 U.S.C. § 551(5) (emphasis added).  The Supreme Court has interpreted that provision as requiring that "agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance."  *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015).  Endorsing the practice of voluntary-remand-with-vacatur where there is no merits ruling would essentially turn courts into the accomplices of agencies seeking to avoid this statutory requirement, as it would allow agencies to repeal a rule merely by requesting a remand with vacatur in court.

Because Congress set forth in the APA a detailed process for repealing rules, we cannot endorse a judicial practice that would help agencies circumvent that process.

**2.**

We address two counterarguments presented by Plaintiffs, both of which fail. Plaintiffs first argue that the APA's judicial-review section is not relevant because voluntary remand "*avoids* judicial review." In other words, Plaintiffs argue that, because voluntary remands exist in a realm of equity that comes *before* a judicial ruling on the merits, the APA's judicial-review section has nothing to say about what equitable remedies courts may fashion in the voluntary-remand context. We do not think that the APA's judicial-review section can be construed so narrowly. It speaks to how courts can respond to challenges to agency actions and specifies when it is appropriate to set aside such actions. The APA's judicial-review section therefore informs us what authority courts have in the voluntary-remand context.

Plaintiffs next cite policy concerns as a reason for us to recognize judicial authority to vacate a challenged rule without first holding it unlawful when granting voluntary remands. Voluntary remands, Plaintiffs contend, permit agencies to thwart the judicial review of agency action alleged to be unlawful that, if left standing during a remand, could cause significant harm. Given those risks, Plaintiffs urge that the APA should be read to give courts the authority to vacate regulations without first holding them unlawful.

We cannot agree. "[P]olicy concerns cannot trump the best interpretation of the statutory text." *Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022). And as explained earlier, the APA's text is best read as authorizing a court to vacate an

agency action only when that court has first held that action unlawful.

In any event, Plaintiffs' policy concerns are misplaced. To begin, if a court suspects that a request for a voluntary remand is frivolous or made in bad faith—for example, because the agency does not actually intend to reconsider the challenged regulation, or because the agency seeks a voluntary remand simply to forestall judicial review—that is reason enough to deny a voluntary remand. *See NRDC*, 38 F.4th at 60. And courts possess "broad discretion" in deciding whether to grant voluntary remands. *Id*. (quoting *Util. Solid Waste*, 901 F.3d at 436). That broad discretion allows a court to deny a voluntary remand—and thus to proceed to decide the merits of the case—if the risk of harm from indefinitely leaving an allegedly unlawful rule in place outweighs considerations of judicial and administrative efficiency. But, under the APA, that discretion does not include the power to vacate a rule without first holding it unlawful.

## V.

For the forgoing reasons, the district court lacked the authority to vacate the 2020 Rule without first holding it unlawful. We therefore must reverse the district court's order in its entirety and send this case back on an open record for reconsideration of the EPA's remand motion. We cannot engage in the factfinding that might be needed to identify any harms that keeping the 2020 Rule in place during a remand might cause, nor can we weigh, in the first instance, those harms against considerations of judicial and administrative efficiency. *See Saucillo v. Peck*, 25 F.4th 1118, 1133 (9th Cir. 2022) (explaining that factfinding is the province of district courts and that a remand is called for

when a district court has relied on an incorrect legal standard to exercise its discretion).  We accordingly reverse and remand for further proceedings consistent with this opinion.

**REVERSED.**